S00G0322. ELLIS v. THE STATE.
(534 SE2d 414)

CARLEY, Justice.

Three men, one of whom wore a ski mask and had a shotgun, accosted several patrons in a restaurant parking lot and robbed one of them. After a car matching the description of the get-away vehicle evaded a police roadblock, the three occupants fled and discarded a backpack. In the abandoned backpack, the officers found a ski mask and a shotgun. The police found Frederick Ellis, Robert Callahan and Thomas Rollins hiding in the vicinity, and arrested them. The grand jury indicted them for four offenses all arising out of the incident in the restaurant parking lot. An eyewitness identified Rollins, but there was no positive identification of Ellis or Callahan. Those two maintained that they had been in the car during the robberies and that two other unidentified men committed the crimes with Rollins. When Callahan hired Linda Lyons as his defense counsel, he asked her if she would also represent Ellis. Ms. Lyons agreed to do so, and she served as the attorney for both at the preliminary hearing and during pretrial proceedings. A month before the trial, Ellis told Ms. Lyons for the first time that he was shown the shotgun and was asked to participate in the robberies, but that he refused to do so. Believing that this version of the events might compromise Ellis' ability to corroborate Callahan's claim of mere innocent presence at the scene of the crime, Ms. Lyons advised both of her clients that she could not represent either of them if the case went to trial. She then arranged for two other attorneys to undertake to defend Ellis and Callahan in the event they decided to go to trial. Thereafter, Ms. Lyons counseled the two separately about the option of entering an

*Alford* guilty plea. See *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970). She did not disclose to either what the other had decided until both agreed to plead guilty. Ellis entered an *Alford* guilty plea to only one count of armed robbery and, in exchange, the trial court imposed the minimum ten-year sentence for that offense and the other three charges were dismissed.

Subsequently, Ellis filed a motion to withdraw his guilty plea, contending that he was denied effective assistance of counsel. According to Ellis, Ms. Lyons was ineffective because she continued to represent both him and Callahan despite an alleged conflict of interest between the two, and also because she failed to provide him with accurate information regarding the adverse parole consequences of pleading guilty. The trial court denied the motions to withdraw and, on appeal, the Court of Appeals affirmed. *Ellis v. State*, 240 Ga. App. 498 (523 SE2d 914) (1999). We granted certiorari in order to address the holding of the Court of Appeals.

1. To prevail on his ineffective assistance of counsel claim, Ellis must show that his lawyer's performance was deficient and that, but for her errors, there is a reasonable probability he would have insisted on going to trial. *Hill v. Lockhart*, 474 U. S. 52, 59 (106 SC 366, 88 LE2d 203) (1985). At the time when Ellis sought to withdraw his guilty plea, a criminal defendant could meet the deficient performance prong by showing that defense counsel failed to inform the client that, as the result of parole ineligibility, he must fully serve whatever sentence the trial court imposed. *Hutchison v. State*, 230 Ga. App. 143 (495 SE2d 618) (1998). Before Ellis' appeal was decided, however, this Court overruled *Hutchison* and held "that the failure to apprise the defendant of such a collateral consequence of the negotiated sentence does not constitute ineffective assistance of counsel." *Williams v. Duffy*, 270 Ga. 580, 582 (1) (513 SE2d 212) (1999). Nevertheless, the Court of Appeals applied *Hutchison*, holding that *Williams v. Duffy*, "applies prospectively only because it announced a new principle of law by overruling clear past precedent. [Cit.]" *Ellis v. State*, supra at 500 (1) (b), fn. 1. Despite its reliance upon *Hutchison*, the Court of Appeals ultimately concluded that Ellis failed to prove the second prong of his claim, because it held that there was no showing of "a reasonable probability that, but for counsel's error, [he] would not have chosen to plead guilty but would have insisted upon going to trial." *Ellis v. State*, supra at 501 (1) (b).

Contrary to the import of the holding of the Court of Appeals, an appellate decision is not always limited to prospective application simply because it overrules clear past precedent. Instead, the general rule is that the overruling decision

" 'is retrospective and makes the law at the time of the over-

ruled decision as it is declared to be in the last decision. The overruled decision as a precedent is thereby destroyed, but it remains the law of the particular case in which it was rendered.' [Cit.]"

*Walker v. Walker*, 247 Ga. 502, 503 (277 SE2d 45) (1981). "[W]hen the newly promulgated 'law' is a judicial decision, then retroactive application is favored. [Cits.]" *Banks v. ICI Americas*, 266 Ga. 607, 609 (3) (469 SE2d 171) (1996). Thus, *Williams v. Duffy* should be applied retroactively unless it comes within the limited exception to the general rule of retroactive application. *Federated Mut. Ins. Co. v. DeKalb County*, 255 Ga. 522, 523 (341 SE2d 3) (1986). The Court must base its analysis upon a consideration of those factors enumerated in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712 (3) (300 SE2d 673) (1983). See also *Banks v. ICI Americas*, supra at 608 (2); *Federated Mut. Ins. Co. v. DeKalb County*, 176 Ga. App. 70 (335 SE2d 873) (1985), aff'd, 255 Ga. 522, supra.

Among the circumstances to be taken into account is whether a retroactive application would result in an injustice or hardship to those who justifiably relied upon the prior rule. *Flewellen v. Atlanta Cas. Co.*, supra at 712 (3); *Walker v. Walker*, supra at 503. In this regard, it is undisputed that Ellis did not rely on *Hutchison* when he pled guilty. Instead, exactly as the habeas petitioner in *Williams v. Duffy*, Ellis only cites *Hutchison* as supporting authority for the contention on appeal that his trial lawyer was ineffective. Application of the new rule did not work an injustice or hardship in *Williams v. Duffy* and does not in this case, since the criminal defendant in neither has a valid vested interest in *Hutchison*'s erroneous holding that defense counsel must provide information regarding the collateral parole consequences of entering a guilty plea.

Because it applies retroactively here, *Williams v. Duffy* compels a holding that Ms. Lyons was not ineffective simply because she allegedly failed to provide Ellis with information concerning his parole eligibility.

2. However, we must still decide whether Ellis has shown that his right to effective assistance of counsel was violated by Ms. Lyons' joint representation of Ellis and Callahan. "[I]t is settled that 'requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not per se violative of constitutional guarantees of effective assistance of counsel.' [Cit.]" *Burger v. Kemp*, 483 U. S. 776, 783 (III) (107 SC 3114, 97 LE2d 638) (1987). Nevertheless, Ellis can prevail on his ineffective assistance of counsel claim by showing that Ms. Lyons' joint representation was deficient, and that her deficiency prejudiced him in his defense to the criminal charges. *Hill v. Lockhart*, supra.

Proof that Ms. Lyons had an actual conflict of interest in the dual representation of Ellis and Callahan would be a sufficient showing as to the first prong. *Fogarty v. State*, 270 Ga. 609, 610 (513 SE2d 493) (1999). Here, Ms. Lyons had such a conflict of interest, because she continued to represent both Ellis and Callahan even after learning that they relied upon inconsistent versions of their defense of innocent presence. See *Meyers v. State*, 265 Ga. 149, 150 (2) (454 SE2d 490) (1995). Compare *Lamb v. State*, 267 Ga. 41, 42 (1) (472 SE2d 683) (1996). Ellis, unlike Callahan, eventually admitted to Ms. Lyons that he had prior knowledge of the plan to commit the crimes. He told her that he was shown the shotgun and was asked to take part in the robbery. Ellis' new version of the events leading up to the commission of the crime made him a less effective corroborating witness for Callahan, thereby establishing an actual conflict between the two and, consequently, an actual conflict for counsel in her continued representation of both.

Because his attorney had an actual conflict of interest, Ellis need only further show that the conflict adversely affected her performance. *Burger v. Kemp*, supra at 783 (III); *Tarwater v. State*, 259 Ga. 516, 518 (383 SE2d 883) (1989). Here, there is no per se presumption of prejudice, which applies where the defendant's right to counsel is denied altogether. Compare *Fogarty v. State*, supra at 610; *Tarwater*, supra at 519. See also *Sallie v. State*, 269 Ga. 446, 448 (2) (499 SE2d 897) (1998) (defense counsel simultaneously serving as law clerk in the same trial court). Rather, in a case like this one, where one attorney jointly represented conflicting interests, "the evil is in what the advocate is compelled to *refrain* from doing. [Cit.]" (Emphasis in original.) *Meyers v. State*, supra at 150 (2). "The test is whether the representation deprived either defendant of the undivided loyalty of counsel. . . . [Cit.]" *Lamb v. State*, supra at 42 (1).

In urging that the dual representation had an adverse effect on Ms. Lyons' representation of him, Ellis points to the fact that she did not suggest that he cooperate with the State and agree to testify against Callahan. Ms. Lyons admits that she did not ask Ellis if he would be willing to assist the prosecution by testifying against Callahan in order "to get a better deal." Because the evidence of Ellis' guilt was somewhat weaker, the State might well have bargained for his testimony against Callahan. Previously, we have recognized that an actual conflict of interest adversely affected the attorney's performance where counsel failed "to pursue an alternative defense theory that is more favorable to one defendant but which would have prejudiced a co-defendant by shifting blame to him. . . . [Cit.]" *Meyers v. State*, supra at 150 (2). Likewise, we now conclude that trial counsel's performance is adversely affected by an actual conflict where, as here, there is a total failure to pursue the possibility of a more

favorable plea bargain on behalf of one co-defendant in exchange for his testimony against the other. "In this case the actual conflict of interest is apparent as is the fact that the conflict adversely affected counsel's performance in defending [her] client. . . ." *Meyers v. State*, supra at 151 (2). Accordingly, the Court of Appeals erred in affirming the trial court's denial of Ellis' motion to withdraw his guilty plea.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 11, 2000.

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys,* for appellee.