## S02A0498. WOODS v. THE STATE.
### (573 SE2d 394)

HUNSTEIN, Justice.

Willie Earl Woods, Jr. was convicted of murder in the 1997 shooting death of Brian Keith Palmer. He appeals from the denial of his motion for new trial.[1] Because appellant received effective assistance of counsel and his remaining enumerations present no grounds for reversal, we affirm.

1. The evidence authorized the jury to find that appellant intended to kill Palmer because Palmer "snitched" to police in Toledo, Ohio about an armed robbery appellant and he had committed there in May 1997. Both men came to Atlanta in June 1997 and the victim contacted appellant. The two men met and the victim agreed to join appellant and co-defendant Antonio Brown in committing an armed robbery. Damon Dawson, an Atlanta acquaintance of Brown, guided them to the apartment complex where the robbery was supposed to occur. As appellant and the victim were walking ahead of Dawson and Brown, appellant suddenly shot the victim in the head, then shot him again in the back when he was on the ground. The victim was fatally wounded by the multiple gunshots. The three men then ran away and Brown later buried the murder weapon behind the house where Dawson was living. The following day appellant and Brown attended a Father's Day barbeque picnic with Dawson, his family and friends. The two men then left town and went to Florida. Ten days after the shooting Dawson voluntarily contacted the police.

Appellant and Brown testified at trial that they had visited Atlanta briefly before the murder but had traveled on to Florida by June 4. They testified they did not return to Georgia until extradited in connection with this case.

The weight and credibility to be given the testimony of witnesses are in the exclusive province of the jury. *Parks v. State*, 275 Ga. 591, 592 (1) (571 SE2d 381) (2002). The jury was authorized to disbelieve the alibi testimony of appellant and Brown and credit the testimony of the State witnesses. See *Givens v. State*, 273 Ga. 818 (1) (546 SE2d 509) (2001). After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC

---

[1] The crimes occurred on June 14, 1997. Woods was indicted July 18, 1997 in Fulton County and charged with murder, felony murder and aggravated assault. He was found guilty on all charges in a verdict rendered on March 22, 1999 and filed March 25, 1999. He was sentenced to life imprisonment by order filed April 1, 1999. His motion for new trial, filed April 15, 1999 and amended May 10, 2001, was denied November 9, 2001. A notice of appeal was filed November 20, 1999. The appeal was docketed December 17, 2001 and was orally argued April 22, 2002.

2781, 61 LE2d 560) (1979).

2. In his first enumeration regarding ineffective assistance of counsel, appellant contends trial counsel's representation of both appellant and Brown created an actual conflict of interest that adversely affected his lawyer's performance in his representation of appellant. See *Ellis v. State*, 272 Ga. 763, 766 (534 SE2d 414) (2000). Assuming, arguendo, that the written waiver of conflict appellant executed was legally insufficient, we find no merit in appellant's contention that he has shown he was adversely affected by the conflict created by trial counsel's joint representation here.

A defendant who does not object to joint representation to the trial court must show not only a conflict of interest, but that the conflict adversely affected his attorney's performance. *Cuyler v. Sullivan*, 446 U. S. 335 (100 SC 1708, 64 LE2d 333) (1980); *Ellis*, supra. Thus, a defendant is required to show "an actual lapse in representation." *Cuyler*, supra, 446 U. S. at 349. "The premise of a defendant's claim that he was denied conflict-free assistance because of joint representation must be that his lawyer would have done something differently if there was no conflict." *Cates v. Superintendent, Indiana Youth Center*, 981 F2d 949, 955 (7th Cir. 1992). Where the record establishes that counsel's conflict did not damage his client but actually helped him, that client cannot show that his lawyer's performance was adversely affected by the conflict. *Yeck v. Goodwin*, 985 F2d 538, 541 (11th Cir. 1993). See also *Meyers v. State*, 265 Ga. 149 (2) (454 SE2d 490) (1995). Accord *United States v. Hall*, 200 F3d 962, 966 (6th Cir. 2000) (in appeal by brothers Rex and Stanley Hall from drug convictions, court affirmed Rex's conviction but reversed as to Stanley where record showed counsel had "concentrated only on Rex Hall" to the prejudice of Stanley Hall).

An examination of the bases asserted by appellant to demonstrate the adverse effect of the conflict reveals that any division of loyalty between appellant and Brown caused by the conflict of interest served only to benefit appellant and at worse adversely affected Brown alone.[2] Appellant points to trial counsel's insistence that no plea agreement be negotiated unless both defendants received the same deal, namely, a guilty plea in exchange for the jail time the men had already served. In light of the State's evidence that appellant was significantly more culpable than Brown, trial counsel's position on this issue solely benefitted appellant. See id. Likewise, the record reflects that trial counsel repeatedly sacrificed Brown's potential defenses, such as mere presence at the scene of the crime, in order to

---

[2] Brown asserted ineffective assistance of counsel as one of the grounds in his motion for new trial; the trial court granted his motion.

avoid undermining appellant's only defense, i.e., that he and Brown were in Florida at the time of the murder.[3] Contrary to appellant's argument, trial counsel's testimony at the motion for new trial does not support appellant's contention. Although counsel acknowledged he did not seek limiting instructions on appellant's behalf regarding testimony by Damon Dawson and Geraldine Harris addressing Brown's behavior and statements,[4] appellant cannot show that but for the conflict his lawyer would have "done something differently," *Cates v. Superintendent, Indiana Youth,* supra, given that cross-examination of these witnesses could only have expounded on evidence that directly contradicted appellant's alibi defense.

Our review of the record reveals that trial counsel's decisions throughout the proceedings were consistent with a defense strategy that served only to support and reinforce appellant's alibi defense, to the detriment of Brown and to the benefit of appellant. Accordingly, because appellant cannot show that counsel's representation of appellant was adversely affected by the conflict, his claim of ineffective assistance of counsel is without merit.

3. Appellant asserts trial counsel was ineffective because (a) he inadequately prepared and presented the alibi defense; (b) failed to seek a continuance to obtain the testimony of a defense witness; (c) failed to object to improper closing argument; (d) failed to introduce exculpatory evidence; and he failed to object properly to inadmissible hearsay evidence. See Division 4, infra. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis,* 253 Ga. 782, 783 (325 SE2d 362) (1985). "The criminal defendant

---

[3] It is uncontroverted that at no time did appellant and Brown indicate to trial counsel that they were not both in Florida on the day of the murder. Compare *Ellis,* supra, 272 Ga. at 766 (based on one client's admission, counsel knew inconsistent defenses were involved in joint representation).

[4] Geraldine Harris owned the house where Dawson lived along with Harris, her daughter and her daughter's three children by Dawson. In regard to Brown, Dawson testified that when the three men returned to Harris's house after the murder, Brown used a large kitchen spoon to bury the murder weapon in the backyard. Harris testified in regard to Brown that he asked her to drive him to Florida; that she saw Dawson cleaning something dirty in her bathtub; she saw him visit her home's backyard repeatedly; and that she overheard Brown tell Dawson that he (Brown) was "sorry for what had went down, and he didn't mean to put him through it." In response to matters first brought out on cross-examination, on redirect Harris testified that Brown had called her from jail and told her "I was with you the whole time."

must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [Cit.]" *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

(a) The record reveals that in preparing and presenting appellant's alibi defense, counsel met repeatedly with appellant, reviewed with appellant the contradictory police statements made by State witnesses, and prepared appellant for testifying at trial. The transcript reflects that counsel conducted substantial cross examination of State witnesses whose testimony contradicted the alibi defense. Counsel testified that he was aware of only one alibi witness, appellant's girlfriend Lakeiva Zimmerman; that he tried to contact another witness, a young woman, whose name he was given but despite three calls to her number he was unable to reach her and the phone was later disconnected. Counsel detailed his contacts with Zimmerman[5] and explained that although she had agreed voluntarily to testify, he had subpoenaed her for trial but she did not appear. Counsel did not seek to compel her presence because appellant told him he had heard that Zimmerman had been arrested for shoplifting and was in jail somewhere in Ohio on a parole or probation violation. Because counsel did not know where she was, he considered further effort "futile." See *Morris v. State*, 257 Ga. App. 169, 172 (2) (570 SE2d 619) (2002) (trial counsel cannot be held ineffective for failing to track down witness whose whereabouts is unknown).

Zimmerman did not testify at the hearing on the motion for new trial; neither did the other alibi witness, Tom Woods, whose name counsel's records reveal he had been given. Appellant thus did not show that the testimony of these witnesses would have been relevant and favorable. *Smith v. State*, 273 Ga. 356 (3) (541 SE2d 362) (2001). Although appellant did adduce the testimony of one alibi witness[6] who stated she would have been available to testify at appellant's trial, the trial court was authorized to credit counsel's testimony regarding the alibi witnesses whose names he was given. See *Palmer v. State*, 274 Ga. 796, 798 (560 SE2d 11) (2002) (counsel not ineffective where counsel not informed of potential alibi witness). Applying

---

[5] Counsel spoke twice with Zimmerman and attempted to corroborate her testimony but she did not give him the names of anyone else who saw her or his clients in Florida. Counsel testified that he tried unsuccessfully to confirm the alibi by contacting a hotel or location in Florida he had been given and that he successfully objected to the State's attempt to introduce a last-minute witness from Florida who had documents that showed no one by Zimmerman's name had been registered at the hotel where Zimmerman may have stayed during the relevant time period.

[6] The witness, appellant's former girlfriend Rebecca Smith, testified that she confronted appellant over his paternity of her child while appellant was in Florida during the relevant time period. Smith had no receipts or other documentation to support her testimony that she was in Florida at that time. Trial counsel was not questioned whether Smith was the young woman he testified he attempted to contact.

the *Strickland* standard, we conclude that trial counsel's performance was not constitutionally flawed.

(b) Trial counsel explained that he did not seek a motion for continuance in order to obtain the testimony of Zimmerman, the jailed alibi witness, because appellant and Brown wanted to go to trial immediately and when he discussed the delay with his clients, they told counsel "Let's go." It thus appears that the tactical decision to proceed without Zimmerman's testimony was made after consultation with appellant and based in large part on appellant's insistence that there be no more delays. Appellant has failed to show that this "tactical judgment of [trial counsel] was outside the wide range of reasonably effective assistance. [Cit.]" *Jefferson v. Zant*, 263 Ga. 316, 320 (3) (b) (431 SE2d 110) (1993). See *Glass v. State*, 255 Ga. App. 390 (10) (d) (565 SE2d 500) (2002).

(c) During closing argument, the Fulton County assistant district attorney improperly stated to the jury on several occasions his personal belief as to the veracity of various witnesses.[7] "The long-standing rule is that counsel may not state to the jury his or her personal belief about the veracity of a witness." (Footnote omitted.) *Bolden v. State*, 272 Ga. 1, 2 (525 SE2d 690) (2000). See also Standard 3-5.8 (b) of the ABA Standards of Criminal Justice Relating to the Prosecution Function, which provides that "[t]he prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." Although counsel gave conflicting explanations for his failure to object, the trial court was entitled to believe counsel's testimony that he recognized the impropriety of the State's argument but deliberately chose not to object because he felt the matter could be better addressed in the defense closing argument. Resolution of this error is thus controlled by the recent opinion of *Braithwaite v. State*, 275 Ga. 884, 886 (572 SE2d 612) (2002), in which Chief Justice Fletcher, writing for the majority, held that

---

[7] At the hearing on the motion for new trial, Stephen Bart Murrin, the assistant district attorney who prosecuted appellant, acknowledged that on several occasions during closing argument he made a number of personal opinion statements as to the veracity of some of the State witnesses. When asked why he felt he could make those statements, Murrin testified:

Because nobody objected otherwise. I don't believe it's illegal. It's impermissible if a lawful objection is made. None was made, so I did it a couple more times. Pushed the envelope, so to speak.

Although Murrin clearly understood that telling the jury he personally believed the veracity of a witness was improper, he nevertheless did so repeatedly. As stated in another recent case involving improper argument by a Fulton County assistant district attorney, " '(i)t ill becomes those who represent the state in the application of its lawful penalties to *themselves* ignore the precepts of their profession and their office.' [Cit.]" *Braithwaite v. State*, 275 Ga. 884, 900-901 (572 SE2d 612) (2002) (Hunstein, J., dissenting).

[w]ith the benefit of hindsight, one can always argue that trial counsel's failure to object was something that no reasonable trial lawyer would do. Our task, however, is to determine whether, in the throes of closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument. Here, [appellant's] attorney reasonably chose silence, and we will not use hindsight to second-guess that decision on appeal.

(Footnote omitted.) This enumeration presents no grounds for reversal.

(d) Appellant contends trial counsel was ineffective for failing to use a videotape as exculpatory evidence at trial. The videotape was not introduced into evidence at the hearing on appellant's motion for new trial and does not appear in the record. We have no means, therefore, to review its contents. However, it is uncontroverted that the tape depicted at least some portions of the Father's Day barbeque picnic on June 15, 1997 that State witnesses testified they and appellant attended, and that appellant is not seen on the tape.

We do not agree with appellant that counsel's performance was deficient for not using the tape to contradict State witnesses who testified that appellant was in Atlanta and at the picnic the day after the murder. Counsel's testimony reflects his recognition that the absence of appellant's image on the videotape did not prove appellant was not at the picnic, but showed only that appellant was "just not on that portion of the tape."[8] Although counsel realized the tape could have "back[ed] up" appellant's alibi defense, counsel made the reasonable decision not to use it because it did not "add to anything" regarding the "swearing contest" between appellant and the State witnesses. See *Brown v. State*, 268 Ga. 354, 357 (4) (a) (490 SE2d 75) (1997) (trial counsel not ineffective for failing to introduce evidence that "did not rule out the possibility that [the accused] was nonetheless at the murder scene").

Furthermore, appellant has failed to make the requisite showing that counsel's error prejudiced the defense. Because appellant never introduced the tape itself into evidence, it is not possible to determine what the tape showed, including such critical matters as how

---

[8] Trial counsel's testimony reflects his recognition that the tape did not particularly help the defense, given the many obvious reasons available to explain why the tape did not include appellant: e.g., the operator focused exclusively on people he/she knew, or on the antics of the children at the picnic, or acceded to a request by appellant himself not to be taped.

extensively it depicted the people attending the picnic and how much of the picnic it recorded. We decline to speculate about the contents of the tape.

> The failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because appellant failed to make any proffer of the [videotape], it is impossible for appellant to show there is a reasonable probability the results of the proceedings would have been different.

(Citations and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995). Accord *Prins v. State*, 246 Ga. App. 585, 590 (5) (539 SE2d 236) (2000) (failure to adduce videographic evidence at hearing leaves court "unable to determine how, if at all, . . . any videotape might have affected the outcome of the case"). Because appellant has failed to prove there was a reasonable probability the results of his trial would have been different had trial counsel introduced the tape, the trial court did not err by denying his motion for new trial on this basis.

4. Appellant contends the trial court erred by admitting testimony by an Ohio police detective regarding the details the victim gave police about the armed robbery appellant and he had committed in Toledo in May 1997.[9] The jury had already heard testimony that appellant believed the victim had "snitched" on him to police and Dawson testified that after the murder, appellant stated he and the victim had committed a robbery in Toledo, the victim had been caught, and had agreed to turn appellant over to the Ohio police. Because this legally admissible evidence covered the essential facts included in the Ohio officer's testimony, we conclude that the admission of the detective's testimony, even if error, was harmless. See *Myers v. State*, 275 Ga. 709 (572 SE2d 606) (2002) (the erroneous admission of hearsay testimony is harmless when it is cumulative of legally admissible evidence of the same fact). It follows that counsel's failure to object to the detective's testimony did not constitute deficient performance that prejudiced appellant's defense and thus appellant was not denied effective assistance of counsel. *Smith v.*

---

[9] According to the detective, Brian Palmer accosted Wilbur Robinson in a parking lot and attempted to force him into Robinson's car. Robinson ran and Palmer fired three shots, hitting Robinson once in the arm. Palmer was caught and told police that he was working with two other people: the get-away driver and appellant, who had been "dropped off just at the entrance so he wouldn't be seen." The detective acknowledged that no warrant was issued for appellant's arrest arising out of this incident. There was no mention of co-defendant Brown in the detective's testimony.

*State*, 275 Ga. 326 (3) (565 SE2d 453) (2002).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., and Sears, P. J., who dissent.*

FLETCHER, Chief Justice, dissenting.

I dissent because trial counsel had an actual conflict of interest in jointly representing the two defendants charged in this case and the conflict adversely affected the representation of Woods.

1. An important issue for trial courts, prosecutors, and defense counsel, which the majority ignores, is the validity of a waiver of conflict of interest. In non-death penalty cases, a defendant may consent to joint representation by waiving the conflict of interest.[10] To be constitutionally valid, however, the waiver must be knowing, intelligent, and voluntary.[11] There is no record in this case of the trial court questioning Woods about his written, pro forma waiver to ensure that it was knowing, intelligent, and voluntary. Nor did trial counsel ever discuss the dangers or conflicts that might arise from joint representation.

I recognize that a trial court is not constitutionally required to conduct a hearing on the validity of a waiver whenever defendants are jointly represented.[12] However, the judicial process would be well-served if trial courts conducted an inquiry as soon as possible whenever faced with jointly represented criminal defendants. An inquiry would permit the trial court to determine well before trial whether separate counsel is required. Additionally, if the inquiry appears on the record and the trial court concludes the waiver is valid, the appellate courts would be better equipped to address the issue on appeal. This suggested procedure is also consistent with Federal Rule of Criminal Procedure 44 (c), which requires federal courts to make an inquiry on the record whenever co-defendants are jointly represented.

A complete inquiry would show on the record that a defendant insisting upon joint representation is aware that a potential conflict exists and may result in counsel foregoing favorable defenses, arguments, and plea negotiations on his behalf.[13] The record should also show that the defendant is aware of his right to separate counsel and

---

[10] *Dean v. State*, 247 Ga. 724 (279 SE2d 217) (1981); compare *Fleming v. State*, 246 Ga. 90, 91 (270 SE2d 185) (1980) (in death penalty cases, defendants cannot waive right to conflict-free counsel and separate counsel must be appointed).

[11] *Fleming*, 246 Ga. at 91.

[12] *Cuyler v. Sullivan*, 446 U. S. 335, 346 (100 SC 1708, 64 LE2d 333) (1980).

[13] *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975); see also *Dean v. State*, 247 Ga. at 725 n. 1 ("trial judges should point out to the defendants that joint representation may create a conflict of interest and determine whether all such defendants agree to joint representation.").

that separate counsel will be appointed if he is indigent.[14] Finally, the trial court should inform the defendant that his waiver of conflict-free counsel will preclude an appellate court from examining any claim of ineffective assistance of counsel based on counsel's conflict of interest.[15] Although establishing a constitutionally sufficient waiver through a colloquy between the trial court and defendant may be an imperfect procedure,[16] I nonetheless conclude that such a procedure will aid the administration of justice by appropriately balancing the defendant's right to counsel of his own choosing and the State's interest in ensuring that criminal trials are conducted fairly.[17]

2. To prevail on an ineffective assistance of counsel claim based on joint or dual representation where the defendant raised no objection at trial, the defendant must show that "an actual conflict of interest adversely affected his lawyer's performance."[18] A defendant need not make the additional showing required under *Strickland v. Washington*,[19] that, but for the deficient performance, the result of the trial would have been different.[20]

3. The record demonstrates that counsel was handicapped in his plea negotiations. His only plea offer of time-served for Woods was unreasonable in light of the State's evidence showing that Woods was the shooter, but was reasonable in light of the evidence suggesting a mere presence defense for Brown. Counsel operating without a conflict would have sought a more reasonable plea agreement on behalf of Woods.[21] Additionally, witnesses testified that, after the crime took place, they saw Brown with a gun that he was trying to hide and that Brown made inculpatory statements. Due to the joint representation, trial counsel failed to cross-examine these witnesses regarding this testimony and had to forego using this evidence to challenge the State's theory that Woods was the shooter, lest counsel implicate his other client, Brown. Because counsel's actual conflict adversely affected his representation of Woods, I would reverse.

---

[14] *Garcia*, 517 F.2d at 278.

[15] Id.

[16] See *Fleming*, 246 Ga. at 92.

[17] *Wheat v. United States*, 486 U. S. 153, 160 (108 SC 1692, 100 LE2d 140) (1988).

[18] *Cuyler v. Sullivan*, 446 U. S. at 348; *Ellis v. State*, 272 Ga. 763, 765 (534 SE2d 414) (2000).

[19] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[20] *Mickens v. Taylor*, 535 U. S. 162 (122 SC 1237, 152 LE2d 291) (2002).

[21] See *Tarwater v. State*, 259 Ga. 516 (383 SE2d 883) (1989) (actual conflict existed when counsel negotiated plea conditioned on all three clients pleading guilty); see also *Holloway v. Arkansas*, 435 U. S. 475, 489 (98 SC 1173, 55 LE2d 426) (1978) ("[I]n a case of joint representation of conflicting interests the evil . . . is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.").

I am authorized to state that Presiding Justice Sears joins in this dissent.

DECIDED NOVEMBER 26, 2002 —
RECONSIDERATION DENIED DECEMBER 13, 2002.

*Patrick D. Deering*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.