A03A1403. CARSON v. THE STATE.

(592 SE2d 161)

BLACKBURN, Presiding Judge.

Following a jury trial, Reginald Kinderly Carson appeals his conviction for armed robbery of Thomas Curry, a 65-year-old terminally ill cancer victim whom Carson had pummeled in the head with a metal object in order to steal the proceeds from his Social Security check. Carson, a five-time felon, also appeals his subsequent recidivist sentence of life imprisonment without possibility of parole, contending in a single enumeration that he received ineffective assistance of trial counsel pursuant to the Sixth Amendment. For the reasons set forth below, we affirm both the conviction and sentence.

The unsavory motivation for Carson's action in both this Court and the court below is clear — Carson was hoping that he could delay his prosecution long enough for his victim to die and become unavailable to testify against him.

The record shows that trial counsel was appointed to represent Carson on March 15, 2001, and that he went to see Carson the next day. The testimony of both trial counsel and Carson conclusively established that counsel informed Carson that the State had not been able to locate the victim, who was elderly and had cancer, and that without the victim, the State's case was weak. Although Carson initially stated that his trial counsel had not discussed the victim's availability to testify with him at all, he later recanted: "Only thing [trial counsel] told me . . . he said tell you the truth, *I wish he were dead.* And then when I looked at him I said what? He said yeah. *Because without him there's no case.*" (Emphasis supplied.)

At the time the State made Carson a plea offer of "25 to do 15," the State was aware that the victim might not survive until trial, and his whereabouts were unknown. Carson, by his own admission, was well aware that, without the victim, the State "had no case." At the October 15, 2001 pretrial hearing, the trial court advised Carson that no negotiated plea would be accepted after that date. Carson, with full knowledge that he could receive a life sentence upon conviction in this case, rejected the plea offer.

Some time after Carson unequivocally rejected the State's plea offer, his victim was found by the State and was available to testify at trial, which began April 29, 2002. At trial, Carson complained that he was dissatisfied with the services of his trial counsel and did not want counsel to represent him. The trial court denied Carson's tactical motion for substitution of counsel and required him to go forward with his current counsel.

Carson then indicated that he was ready to accept the plea that the State had offered him months earlier. The prosecutor, however, informed the court that the court-imposed deadline for a negotiated

plea had passed, and the plea offer was no longer available in any event. Carson was told that, at that time, the only plea he could enter was a nonnegotiated plea, and that if he entered such a plea, he would lose his right of appeal. Carson decided that he would not enter a nonnegotiated plea but would go forward with the trial.

Carson argued that this Court should enforce the original plea offer. Because Carson did not accept the plea, there is no plea agreement to enforce. Carson knew that he might be sentenced to life in prison, but he also knew that if he agreed to the plea offer, he would be foreclosing the possibility that the man he had beaten and robbed might die before he could be brought to trial. Weighing these possibilities, he chose to reject the plea offer, and the integrity of our criminal justice system requires us to affirm the trial court's ruling.

In this appeal, Carson specifically contends that his trial counsel rendered ineffective assistance by failing to inform him that (1) he would receive a mandatory sentence of life without parole if he rejected a plea offer extended by the State and (2) the State intended to introduce certain damaging evidence against him if he chose to go to trial.

> Under the standard established in *Strickland v. Washington*,[1] one asserting his trial counsel's performance was so deficient as to deny him effective assistance of counsel under the Sixth Amendment must make two affirmative showings: that counsel's representation fell below an objective standard of reasonableness (i.e., that counsel performed deficiently); and that such deficiency prejudiced the defense.

*Howard v. State.*[2] Carson has failed to make these necessary showings with respect to either one of his contentions.

We first address Carson's argument that his counsel failed to advise him that he could receive a mandatory life sentence. Carson was advised by his attorney of the possibility of a life sentence, and trial counsel made Carson aware of "the range of possible sentences" he faced if he rejected the plea. Although Carson's attorney did not explain that a mandatory life sentence was probable, he informed Carson that such result was possible. In other words, Carson knew "that the consequences of refusing the State's plea offer could be harsher than the consequences of accepting it." (Punctuation omitted.) *Sutton v. State;*[3] see also OCGA § 17-10-7. That is all the law requires.

---

[1] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[2] *Howard v. State*, 251 Ga. App. 243, 245 (7) (553 SE2d 862) (2001).

[3] *Sutton v. State*, 263 Ga. App. 188, 190 (1) (587 SE2d 379) (2003).

Furthermore, Carson has wholly failed to show that his trial counsel's alleged deficiency prejudiced him. In a case in which a defendant complains that his trial counsel was deficient for failing to adequately inform him of the consequences of accepting a plea, "such prejudice can only be shown by some indication that [at the time the defendant rejected a plea he] was amenable to the offer made by the state." *Lloyd v. State.*[4] Here, the evidence indicates that Carson had no intention of accepting the State's plea offer because he was aware that the victim, and key witness, in the case was ill with cancer and might be deceased by the time of trial if trial were delayed. Thus, even if trial counsel's performance had been deficient, Carson was not prejudiced by the deficiency.

Carson further contends that his trial counsel rendered ineffective assistance by failing to inform him about the details of the State's case against him. The record, however, clearly shows that this enumeration is patently without merit. The trial court's determination that Carson was not denied effective assistance of counsel is not clearly erroneous, and we affirm this ruling.

Our aim in reviewing the conduct of criminal prosecutions is to ensure that there is a level playing field for both the State and criminal defendants; the rights we uphold and the rules we enforce exist for the advancement and preservation of justice. Our criminal justice system is designed to ensure that a defendant's constitutional rights are protected, and that a fair trial is provided. It is the responsibility of the trial court to ensure that the system is not manipulated by any party, while protecting the defendant's constitutional and statutory rights. The trial judge here has acted responsibly in satisfying both obligations.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Ruffin, P. J., and Miller, J., concur. Ellington, J., concurs in the judgment only. Phipps, J., dissents.*

PHIPPS, Judge, dissenting.

The evidence supports Carson's conviction, but I respectfully dissent from the majority's affirmance of Carson's mandatory sentence of life imprisonment without possibility of parole for his perpetration of two armed robberies. Although it is certainly within the province of the legislature to provide for severe mandatory sentences, we should not sanction their imposition unless the defendant has been afforded all of the rights and protections the law extends. Under the Sixth Amendment guarantee of effective assistance of counsel, Carson had a right to be told that if he rejected a plea bargain offered to

---

[4] *Lloyd v. State*, 258 Ga. 645, 648 (2) (b) (373 SE2d 1) (1988).

him by the state and was convicted of armed robbery at trial, he would be given a mandatory sentence of life imprisonment without possibility of parole due to the state's intent to utilize his prior armed robbery conviction in aggravation of punishment under what is known as Georgia's "two strikes and you're out" law. Yet, Carson's defense attorney did not realize that Carson could receive a sentence of life imprisonment without possibility of parole until the case came on for trial. Thus, Carson was deprived by his attorney of the mandatory sentencing information he needed to make an informed and voluntary decision about whether to accept or reject a negotiated plea. Under the circumstances, I would vacate Carson's sentence and remand this case to the trial court for further proceedings.

In moving for a new trial, Carson complained that his attorney had been ineffective in failing to inform him of the sentence he faced if he rejected the state's plea offer. The trial court denied Carson's motion, ruling that he had not carried his burden of showing ineffective assistance of counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. [Cits.][5]

The issue is a mixed question of law and fact; therefore, we accept the trial court's factual findings unless clearly erroneous, but we independently apply the law to the facts.[6] In my opinion, the trial court incorrectly applied the controlling law to the undisputed facts.

OCGA § 17-10-6.1 (a) sets forth seven "serious violent felonies" which include armed robbery.[7] OCGA § 17-10-6.1 (c) (3) generally provides that any sentence imposed for the first conviction of any serious violent felony shall be served without eligibility for parole. Under OCGA § 17-10-7 (b) (1) and (2), any person convicted of a "serious violent felony" who after such conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to life without parole. But, in order to invoke the recidivist provisions of OCGA § 17-10-7, the

---

[5] *Woods v. State*, 275 Ga. 844, 846 (3) (573 SE2d 394) (2002).

[6] *Blouin v. State*, 255 Ga. App. 788, 789 (567 SE2d 39) (2002).

[7] See OCGA § 17-10-6.1 (a) (2).

state must provide the defense with timely notice of its intent to use prior convictions of the defendant in aggravation of punishment.[8]

Carson was charged with one count of armed robbery and two counts of aggravated assault on Thomas Curry, and with another count of aggravated assault on Skipper Luster. Although Carson had five prior felony convictions, including one for armed robbery, the state offered to let him plead guilty in exchange for a sentence of fifteen years imprisonment followed by ten years probation (referred to as "25 to do 15") because of uncertainty as to whether Curry would be available to testify at trial. The record does not clearly establish the offense or offenses to which Carson would have pled guilty under the state's plea offer. After consulting with his court-appointed attorney, Carson rejected the plea offer.

The state subsequently gave the defense notice of its intent to seek recidivist punishment under OCGA § 17-10-7. At trial, Carson informed the court that he would have accepted the state's plea offer if he had been aware of the number of charges he was facing. The prosecuting attorney refused to renew the plea offer because the state had secured Curry's attendance at trial. The court gave Carson the opportunity to enter a nonnegotiated plea of guilty, and Carson responded that he wanted to enter a guilty plea "if you let me take 25 do 15." Because life imprisonment without possibility of parole is the mandatory sentence for a recidivist armed robber, the court expressed doubt as to whether it would be authorized to impose a lesser sentence, and no guilty plea was entered.

Both Curry and Luster testified at trial, and the jury found Carson guilty of one count of armed robbery and one count of aggravated assault on Curry. The court merged the aggravated assault conviction into the armed robbery conviction. Because of his prior armed robbery conviction, Carson was given a mandatory sentence of life imprisonment without possibility of parole under OCGA § 17-10-7 (b) (2).

Carson moved for a new trial, claiming that counsel had rendered ineffective assistance in failing to inform him that, if convicted of armed robbery, he would receive a sentence of life imprisonment without possibility of parole. Counsel testified that he had advised Carson of the possibility that he could be sentenced to life imprisonment; but, because he had not received the state's notice of intent to seek recidivist punishment until after plea negotiations had ended, he had not told Carson that a conviction of armed robbery would carry a mandatory sentence of life imprisonment without possibility

---

[8] See *West v. Waters*, 272 Ga. 591 (1) (533 SE2d 88) (2000); *Young v. State*, 245 Ga. App. 684, 686 (3) (538 SE2d 760) (2000); OCGA § 17-10-2 (a).

of parole. Nor had counsel informed Carson of the possibility that he would face a mandatory sentence of life imprisonment without possibility of parole if convicted of armed robbery. Counsel testified that, in fact, he did not realize that Carson could receive a sentence of life imprisonment without possibility of parole until the case came on for trial; that if he had been aware of that possibility, he would have informed Carson; and that, although he had no idea whether that would have been important to Carson's decision to plead guilty, "it would have made a difference to me." At the hearing on his motion for new trial, Carson testified that he had entered guilty pleas in all of his prior cases and that he would have entered a guilty plea in this case if he had known he was facing a mandatory sentence of life imprisonment without possibility of parole.

Although *Lloyd v. State*[9] requires counsel to inform his client of the choices confronting him when the state has made a guilty plea offer, *Williams v. Duffy*[10] holds that a defendant does not have to be told of his ineligibility for parole. Finding *Duffy* controlling, the trial court ruled that Carson had not carried his burden of showing ineffective assistance of counsel and denied his motion for new trial. Moreover, the court noted that the state did not file its notice of intent to seek recidivist punishment until after its plea offer had been rejected and that counsel did inform Carson that life imprisonment was a possible consequence of a conviction.

In *Lloyd v. State*, our Supreme Court held, as a matter of first impression, that "[o]bjective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him. For counsel to do otherwise amounts to less than reasonably professional assistance."[11] But the Court in *Lloyd* further concluded that in order for prejudice to be shown, there must be "at least an inference from the evidence that the defendant would have accepted the offer as made or something similar."[12] "[P]rejudice can only be shown by some indication that the defendant was amenable to the offer made by the state."[13]

*Muff v. State*[14] and *Whitehead v. State*[15] were decided when OCGA § 16-13-30 (d), which is part of the Georgia Controlled Substances Act, mandated a sentence of life imprisonment upon conviction of a second or subsequent offense for violating OCGA § 16-13-30

[9] 258 Ga. 645 (373 SE2d 1) (1988).
[10] 270 Ga. 580 (513 SE2d 212) (1999).
[11] (Footnote omitted.) 258 Ga. at 648 (2) (a).
[12] (Footnote omitted.) Id. at 648 (2) (b).
[13] Id.
[14] 210 Ga. App. 309, 310 (2) (436 SE2d 47) (1993).
[15] 211 Ga. App. 121 (438 SE2d 128) (1993).

(b) with respect to a Schedule I or Schedule II controlled substance.[16] The defendants in *Muff* and *Whitehead* were convicted of selling cocaine, and each received a mandatory sentence of life imprisonment due to a prior conviction of possession of cocaine with intent to distribute. They both argued that their trial attorneys had been ineffective because they had failed to inform them that they faced a mandatory life sentence if convicted at trial.

*Muff* held that although the case involved counsel's failure to advise his client regarding the consequences of rejecting a plea, rather than failure to communicate a plea or to give accurate advice concerning the consequences of entering a guilty plea, "the *Lloyd* analysis controls our decision."[17] *Whitehead* also applied *Lloyd* in deciding whether counsel had been ineffective in advising his client to reject a plea bargain offered by the state. In *Whitehead*, and later in *Sutton v. State*,[18] we held that the defendants had not been misled when they were told that life imprisonment was a possible consequence of entering a guilty plea, because uncertainty existed as to the applicability of mandatory life sentencing provisions.

In *Hutchison v. State*,[19] a defendant who had entered a plea of guilty complained of counsel's failure to inform him that the offense to which he pled guilty was designated a "serious violent felony" which under OCGA § 17-10-6.1 (c) (3) would require him to serve his prison sentence in its entirety. In reliance on *Lloyd*, this court held that because it was clear that counsel was unaware of the existence of the statute and therefore was unable to correctly advise his client of the consequences of the choices confronting him, he should have been allowed to withdraw his guilty plea based on ineffective assistance of trial counsel.

*Hutchison*, however, was overruled in *Williams v. Duffy*.[20] The defendant in *Duffy* entered a negotiated plea of guilty to a charge of armed robbery in exchange for a recommended sentence of 15 years. In habeas proceedings, he claimed that his attorney had been ineffective in failing to advise him that, pursuant to OCGA § 17-10-6.1 (c) (3), he would be ineligible for parole. Our Supreme Court distinguished *Lloyd* and rejected this claim, holding,

> "eligibility or ineligibility for parole is not a 'consequence' of a plea of guilty, but a 'matter of legislative grace' or a 'consequence of the withholding of legislative grace.' (Cits.)" [Cit.]
> Thus, OCGA § 17-10-6.1 (c) (3) would have only a collateral

---

[16] Ga. L. 1980, p. 432, § 1, repealed by Ga. L. 1996, p. 1023, § 1.1.
[17] 210 Ga. App. at 311.
[18] 263 Ga. App. 188 (587 SE2d 379) (2003).
[19] 230 Ga. App. 143 (495 SE2d 618) (1998).
[20] 270 Ga. at 580.

effect on Duffy's sentence for armed robbery, in no way lengthening the sentence itself, but conditioning satisfaction of that sentence upon Duffy's incarceration for the designated 15-year period. [Cits.] There is no constitutional requirement that a defendant be advised of such collateral consequences in order for his guilty plea to be valid. [Cits.] If a defendant's actual knowledge of such collateral consequences is not a prerequisite to his entry of a knowing and voluntary guilty plea, his lack of knowledge of those collateral consequences cannot affect the voluntariness of the plea. (Cit.) Accordingly, counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance. [Cit.][21]

In *Wallace v. State*,[22] the defendant was convicted of two counts of sale of cocaine and was given the maximum sentence of thirty years on each count because he was a felony recidivist. Defendant moved for a new trial, complaining of counsel's failure to inform him of the state's notice of intention to seek recidivist punishment under OCGA § 17-10-7 (a). This court held that even assuming this was deficient, Wallace did not meet his burden of showing prejudice because he had not shown that the state had even made or was amenable to any plea negotiations.[23]

Since *Wallace*, we have applied *Duffy* in a series of cases beginning with *Taylor v. State*,[24] and ending with *Pickard v. State*.[25] Those cases have rejected ineffective assistance of counsel claims grounded on the assertion that the defendant would have accepted a plea bargain offered by the state but for the fact that his attorney failed to timely inform him that, as a consequence of recidivist punishment, he would be ineligible for parole under OCGA § 17-10-7.

Because a defendant is entitled to know the range of possible sentences he faces before entering or rejecting a guilty plea,[26] the decisions in *Muff*, *Whitehead*, and *Wallace* are, however, unaffected by *Duffy*. Therefore, although counsel is not ineffective for failing to

---

[21] Id. at 581-582 (1).

[22] 238 Ga. App. 69 (517 SE2d 801) (1999).

[23] Id. at 72 (3).

[24] 239 Ga. App. 329 (521 SE2d 375) (1999).

[25] 257 Ga. App. 642, 644 (3) (572 SE2d 660) (2002); see *Mann v. State*, 240 Ga. App. 809, 810 (1) (b) (524 SE2d 763) (1999); *Gary v. State*, 244 Ga. App. 577 (536 SE2d 220) (2000); *King v. State*, 246 Ga. App. 100, 102 (3) (539 SE2d 614) (2000); see also *Abernathy v. State*, 252 Ga. App. 635, 638 (5) (e) (556 SE2d 859) (2001).

[26] See *Jones v. State*, 253 Ga. App. 848 (1) (560 SE2d 695) (2001); *Johnson v. State*, 242 Ga. App. 89, 90 (1) (a) (528 SE2d 861) (2000); *Johnson v. State*, 227 Ga. App. 390, 391 (1) (489 SE2d 138) (1997).

inform the defendant that the sentence he faces must be served without possibility of parole (even if it is a life sentence), the defendant must be informed that his conviction at trial will result in a mandatory sentence of life imprisonment or confinement for a certain number of years if such is the case.

Although the prosecution argues that in this case defense counsel was not apprised that Carson faced a mandatory sentence of life imprisonment until the state filed its formal notice of intent to seek recidivist punishment following Carson's rejection of its plea offer, the record shows that counsel was put on notice of the state's intent to utilize all of Carson's prior convictions in aggravation of punishment under OCGA § 17-10-7 in a reciprocal discovery disclosure served on defense counsel before the plea offer was rejected, and that counsel had been made aware of Carson's criminal record during plea negotiations. Consequently, counsel knew, or should have known, that if Carson rejected the state's plea offer and was later convicted of armed robbery at trial, he would be given a mandatory sentence of life imprisonment if the state followed through with its intent to seek recidivist punishment. Counsel advised Carson that imposition of life imprisonment, presumably on a discretionary basis, was only a possibility. In my opinion, such advice is deficient where the state has announced its intent to utilize sentencing provisions that would result in imposition of a mandatory sentence of life imprisonment without possibility of parole. Because the trial transcript certainly provides some indication that Carson would have accepted the plea offer if he had known that he faced such a sentence, Carson has carried his burden of showing prejudice as well as deficient performance. The Supreme Court in *Lloyd v. State* left open the question of the appropriate remedy where prejudice is shown.[27]

The majority in this case states that "the rights we uphold and the rules we enforce exist for the advancement and preservation of justice," that "[o]ur criminal justice system is designed to ensure that a defendant's constitutional rights are protected, and that a fair trial is provided," and that "[i]t is the responsibility of the trial court to ensure that the system is not manipulated by any party, while protecting the defendant's constitutional and statutory rights." In full agreement with these sentiments, I would affirm Carson's armed robbery conviction, vacate his sentence of life imprisonment without possibility of parole, and remand the case to the trial court for determination of whether it would have accepted a pretrial plea by Carson and given him a sentence of fifteen years imprisonment followed by

---

[27] 258 Ga. at 648, n. 6.

ten years on probation. If so, I think Carson is entitled to enforcement of the plea agreement.

DECIDED DECEMBER 1, 2003 —
RECONSIDERATION DENIED DECEMBER 16, 2003 — 

*Lynn G. Fant*, for appellant.
*Patrick H. Head, District Attorney, Maziar Mazloom, Amy H. McChesney, Assistant District Attorneys*, for appellee.