A94A0444, A94A0445. STEPHENS v. THE STATE (two cases).
(447 SE2d 26)

POPE, Chief Judge.

Jointly tried before a jury, defendants Benjamin Franklin Stephens and his son Benjamin Shawn Stephens were each found guilty of five counts of arson arising out of the November 14, 1990 fire that destroyed their home and four automobiles. They filed separate appeals from the judgments of conviction, raising identical enumerations of error. The appeals are hereby consolidated for disposition in this single opinion.

1. Defendants enumerate the general grounds. Construed to uphold the verdict, the evidence adduced below showed that defendant Frank Stephens was a veteran firefighter who had fallen on severe financial hard times. His checking account had been closed by his bank because of recurrent overdrafts, credit cards had been cancelled with large balances owing, and his home was in foreclosure. Electric utility service to the house had once been disconnected for meter tampering and non-payment. Subsequent electric service, with the account changed to Shawn's name, was again terminated for non-payment in October 1990. A few days before the fire, Shawn had reconnected the power himself without the consent of the electric company. Although water service had been terminated, the telephone service had been reconnected and was working on the day of the fire. Evidence of Shawn's own financial distress was presented, indicating that he had trouble making car payments, was delinquent on medical bills resulting from an attempted suicide and owed money to suppliers for his unsuccessful painting and contracting business. Frank Stephens' sole remaining asset was the insurance policy on his home, which provided over $100,000 in coverage.

Defendants admitted being at the scene when the blaze began. Frank Stephens took the blame for starting the fire accidentally in the garage. In a statement given at the scene to the county fire investigator, Frank Stephens claimed that he and his son were attempting to start one of the cars by pouring gasoline through the carburetor when the engine backfired. The gasoline erupted into flames, the defendants panicked, and the flames spread rapidly. The fire investigators described the pattern as "unusual," with the fire being "very hot" and "very fast." Expert testimony was presented that the fire had been intentionally set, with gasoline and other petroleum products used from car to car and throughout the structure as accelerants. A paint thinner can was found in an upstairs mattress and the fuel tank

caps had been removed from the automobiles, emitting additional gasoline vapors throughout the house. Although firefighters responded within five minutes of Shawn Stephens' call, the fire had already progressed to the point where half of the residence collapsed and had consumed the four automobiles. The fire investigator was of the opinion that the sprinkler system had been dismantled before the fire. Shawn broke the windows of the garage from the outside which had the effect of ventilating the fire and bringing it throughout the house. Each defendant submitted insurance claims for items allegedly lost or destroyed in the fire. The insurer of the house and lienholders on the automobile titles did not consent to the burning of the house or the cars.

A person commits the offense of arson in the first degree when, by means of fire or explosive, he knowingly damages any dwelling house "when such is insured against loss or damage by fire . . . and such loss or damage is accomplished without the consent of both the insurer and the insured." OCGA § 16-7-60 (a) (3). Similarly, a person commits the offense of arson in the second degree when, by means of fire or explosive, he knowingly damages a vehicle without the consent of both the owner of the vehicle and the holder of any security interest therein. OCGA § 16-7-61 (a). " 'Three things are necessary to sustain a conviction for arson: that the real property . . . was in fact burned, that its cause was a criminal agency, and that the defendant was that criminal agency. [Cit.] The latter may be proved by circumstantial evidence. [Cit.]' [Cit.]" *Powell v. State*, 171 Ga. App. 876 (1) (321 SE2d 745) (1984). Despite the father's claim that the fire began accidentally, from the evidence adduced at trial a rational trier of fact could reasonably have found defendant Frank Stephens guilty of arson beyond a reasonable doubt. See *Burns v. State*, 166 Ga. App. 766, 768 (3) (305 SE2d 398) (1983). Shawn Stephens denied complicity in any scheme to commit arson. Nevertheless, he acted to ventilate and thus spread the fire. Motive was established by evidence of his own financial and personal problems. This was sufficient to authorize his conviction under OCGA §§ 16-7-60 (a) (3) and 16-7-61 (a) as an aider and abettor. The enumeration of the general grounds is without merit.

2. The trial court did not err in refusing to merge all charges into a single conviction. The evidence showed a series of incendiary acts involving the property of different entities: the intentional setting of the fire; the use of accelerants to spread that fire from one car to another; ventilation to hasten the burning of the structure and further use of accelerants upstairs in a bedroom. The non-consensual burning of the house adversely affected the interest of the insurer, State Farm, while the destruction of the cars affected the interest of the purchase money creditors. Compare *Corson v. State*, 144 Ga. App.

559, 560 (1c) (241 SE2d 454) (1978).

3. Defendants enumerate as "plain error" the refusal of the trial court to give their written request to charge on "two theories" as part of the court's instruction on circumstantial evidence. The record reveals the trial court did charge the jury correctly on the law of circumstantial evidence by quoting the language of OCGA § 24-4-6. When the jury charge given substantially covers the principles in the requested charge, it is not error to fail to give the requested charge. In the instant case, the trial court properly charged the jury on the law of circumstantial evidence, the presumption of innocence and the need to prove defendant's guilt beyond a reasonable doubt. Under these circumstances, it was not error to refuse to give the "two theories" charge. See *Burris v. State*, 204 Ga. App. 806 (3) (420 SE2d 582) (1992); see also *Langston v. State*, 208 Ga. App. 175 (430 SE2d 365) (1993).

4. The State introduced evidence of a controlled experiment whereby the fire investigator attempted to replicate Frank Stephens' version of events showing an accidental fire caused by automobile engine backfire. Defendants enumerate the admission of this evidence, asserting that the experiment was not sufficiently similar.

Although the engine used in the experiment was found at a junkyard in the body of a Ford Maverick, that engine was identified as a Chevrolet in-line six with a Rochester carburetor of the same era as that found in Frank Stephens' Chevrolet Impala. "The admission of testimony as to experiments rests largely in the discretion of the trial judge, and the exercise of this discretion will not be controlled unless manifestly abused. The weight of such testimony is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation. [Cits.]" *West v. State*, 200 Ga. 566, 571 (2) (37 SE2d 799) (1946). " '[T]he true rule is that there should be substantial and reasonable similarity in the facts proved in the case and the facts upon which the experiment is based. The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible.' " *Miller v. State*, 53 Ga. App. 275, 276 (1) (185 SE 372) (1936). "Any dissimilarity between the conditions of this particular experiment and the actual occurrence, [as related by defendant,] [go] to the weight and not [to] the admissibility of [the experimental reenactment] evidence." *McCulligh v. State*, 169 Ga. App. 717, 719 (2) (314 SE2d 724) (1984).

5. The State sought to introduce evidence of statements made by Frank Stephens regarding his worrisome financial condition. These admissions were made to an emergency technician who was treating

Frank Stephens for bruises received in an alcohol-related altercation with his son. Over the objections on the grounds of relevancy and that such evidence was more prejudicial than probative, the trial court admitted these statements and this evidentiary ruling is enumerated as error. We agree that defendant's stated perception of his dire financial condition was relevant to establish the motive to burn his home for the insurance proceeds. "While motive is not an essential element in the proof of the crime of [arson], the State is entitled to present evidence to establish that there was a motive. . . . Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [Cit.]" *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990). The admission of these statements was not an abuse of the broad discretion which the trial court has over evidentiary matters. *Parnell v. State*, 204 Ga. App. 488 (2) (420 SE2d 42) (1992).

6. Defendants' sixth enumeration of error has been withdrawn.

7. The trial court charged that voluntary intoxication would not be an excuse for arson. This is a correct statement of the law. OCGA § 16-3-4 (c). The instruction given was not burden-shifting as to the issue of a general criminal intent and an enumeration of error predicated on this ground is without merit. *Burns*, 166 Ga. App. at 769 (4). See also *Krier v. State*, 249 Ga. 80, 86 (6) (287 SE2d 531) (1982); compare *McEver v. State*, 258 Ga. 768 (3) (373 SE2d 624) (1988).

8. Frank Stephens enumerates as error the admission into evidence of State's Exhibit 228, the consent form he signed authorizing the fire investigators to search his home and vehicle, and authorizing them to take any papers deemed pertinent to their investigation of the cause and origin of the fire. This form recites that the consent to search was voluntarily given after Stephens had been notified of his right to refuse a search without a warrant. On appeal, it is urged that these recitals amount to a custodial statement and the consent form itself should have been excluded because Stephens had not been given any *Miranda* warnings. We are unable to consider this enumeration. Although the trial court conducted a hearing on the voluntariness of defendant's consent, no objection to this exhibit was made below on this ground. See *Reeves v. State*, 169 Ga. App. 665, 666 (2) (314 SE2d 682) (1984). Objections to evidence which are not timely urged at trial cannot be raised for the first time on appeal, for they are deemed to have been waived. *White v. State*, 203 Ga. App. 889, 890 (1) (418 SE2d 149) (1992).

9. The same attorney represented both defendants during trial. They now urge that this dual representation amounts to ineffective assistance of counsel because of a conflict of interest.

(a) Although reference is made in the enumeration to the Georgia Constitution, no argument or citation to authority is advanced on

Georgia constitutional principles. To the extent that state constitutional principles would afford an independent basis for decision, the enumeration is deemed abandoned in accordance with Court of Appeals Rule 15 (c) (2).

(b) "It is [a] fundamental principle that the Sixth Amendment guarantee of effective assistance of counsel includes the right of an accused to be represented by an attorney free of any conflicts of interest. [Cit.] There is a presumptive conflict of interest when one attorney is required to represent multiple defendants *over their objection.* [Cit.] However, if the defendants do not object to the multiple representation by the attorney until after trial, there is no benefit of a presumption and the defendants must show that an *actual conflict* of interest existed *which impaired* their attorney's performance on their behalf. [Cit.]" (Emphasis supplied.) *Keen v. State,* 164 Ga. App. 81, 82 (1) (296 SE2d 91) (1982). "[T]o justify separate counsel, the conflict may not be merely theoretical or speculative, but must have some substantial basis in fact. [Cits.]" *Davis v. State,* 129 Ga. App. 796, 799 (1) (201 SE2d 345) (1973). "A mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence. [Cit.]" *Montgomery v. State,* 156 Ga. App. 448, 454 (275 SE2d 72) (1980). See also *Weeks v. State,* 190 Ga. App. 373 (1) (378 SE2d 895) (1989).

In the instant case, the defenses were not antagonistic, indeed, the testimony of both co-defendants was wholly exculpatory of the other. Accordingly, counsel was free to advance vigorously all helpful theories raised by the evidence without slighting one client or inhibiting the defense of either. Defendants have " 'failed to show in the record any actual conflict of interest or how such potential conflict of interest actually impaired the attorney's performance or representation. [Their] contentions raise only the [bare] possibility of conflict' " which is insufficient to require a new trial. *Barnes v. State,* 160 Ga. App. 232 (286 SE2d 519) (1981). See also *Griggs v. State,* 262 Ga. 766, 769 (4b) (425 SE2d 644) (1993). " 'Where(, as here,) the issue is not timely raised, only in the most flagrant of cases can it be held error for the court to fail to interject itself in the case and *sua sponte* to appoint [separate] counsel for one or more defendants where its intervention [is] not . . . sought.' " *Ward v. State,* 195 Ga. App. 166 (1) (393 SE2d 21) (1990). The circumstance whereby the State allegedly offered to drop charges against the son if the father agreed to plead guilty does not establish harm to either defendant in their attorney's presentation of the defense because the evidence shows both spurned the State's offer, preferring to assert their innocence.

10. In related enumerations, defendants urge that the house and the burned-out Chevrolet were unlawfully subjected to a warrantless search by fire investigators. However, that search and the subsequent

seizure of any papers were conducted pursuant to the written consent of Frank Stephens. After a hearing, the trial court determined that Stephens' written consent was knowingly and voluntarily granted, and that determination is not otherwise enumerated as error. The "Fourth Amendment search warrant requirement applies to fire scene searches with certain exceptions." *Waters v. State*, 174 Ga. App. 916, 917 (1) (331 SE2d 893) (1985). A valid consent to search is one of those permitted exceptions to the fire scene warrant requirement. See, e.g., *Kosal v. State*, 204 Ga. App. 708, 710 (1a) (420 SE2d 621) (1992).

Accordingly, a motion to suppress evidence seized pursuant to Stephens' valid written consent on the ground that a fire scene search warrant was nevertheless required would be without merit. It follows that defendants cannot demonstrate that they received ineffective assistance of counsel from their first attorney merely by showing that counsel failed to file such a meritless motion to suppress. Defendants clearly were not prejudiced by the omission alleged here. See *Richardson v. State*, 189 Ga. App. 113 (375 SE2d 59) (1988). Similarly, defendants cannot show an abuse of the trial court's discretion by its refusal to entertain as untimely any post-arraignment motion to suppress on this ground, filed by subsequently retained counsel. *State v. Grandison*, 192 Ga. App. 473 (385 SE2d 139) (1989).

*Judgments affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED APRIL 1, 1994 —
RECONSIDERATIONS DENIED JULY 28, 1994 — ▮▮▮▮▮▮▮▮

*Alden W. Snead, J. M. Raffauf*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.

