## A02A2232. JACKSON v. THE STATE.
(578 SE2d 181)

JOHNSON, Presiding Judge.

    A jury found Timothy Jackson guilty of burglary. He appeals from the conviction entered on the verdict, claiming he was denied his Sixth Amendment right to counsel because: (1) trial counsel did not attempt to introduce a witness' pre-trial statement which he claims was exculpatory; and (2) counsel had a conflict of interest in representing both Timothy Jackson and his wife, Tracy Jackson.[1] We find no error and affirm the conviction.

    Viewing the evidence in a light most favorable to the verdict, it shows that John Dowdy and his sister, Tammy Dowdy, both worked at a bar called Charlie's Place. John Dowdy got into an argument with Charlie Welch, the owner of Charlie's Place, and John Dowdy was fired. John Dowdy and two teenaged boys then drove to the home of Tammy Dowdy. While en route, John Dowdy spoke of getting even with Welch by breaking into the bar.

    The group arrived at Tammy Dowdy's mobile home around 3:30 a.m. While there, John Dowdy demanded that his sister give him the key to Charlie's Place. She refused. John Dowdy was "real mad and running his mouth talking about he was going to get back at Charlie." John Dowdy talked with several people present about getting revenge by breaking into Charlie's Place and stealing the cash box. One of the teenagers, Burt Morgan, testified that the Jacksons were present in the home when John Dowdy asked Tammy Dowdy for a key to Charlie's Place, and were present in the back room of Tammy

---

    [1] Tracy Jackson was also convicted of burglary. We affirmed her conviction and remanded the case for resentencing in *Jackson v. State*, 244 Ga. App. 477 (535 SE2d 818) (2000).

Dowdy's home when John Dowdy discussed the plan. The other teenager, Todd Davis, testified that John Dowdy talked to the Jacksons when the group first arrived at the trailer, that when John Dowdy first arrived he was talking about breaking into Charlie's Place, and that John Dowdy was telling people in the back room of the home that "he was going to pay Charlie back."

A short time later, John Dowdy, Morgan, and the Jacksons left Tammy Dowdy's home in a van headed for town. Tracy Jackson was driving, but John Dowdy told her which way to go. Morgan testified that, while in the van, John Dowdy told the Jacksons that he was going back to Charlie's Place to break in, and that John Dowdy and the Jacksons discussed how they were going to split the money. Tracy Jackson dropped John Dowdy off at Charlie's Place, drove on to Wal-Mart, returned shortly thereafter, and picked up John Dowdy, who had the cash box and money. Morgan testified that all four people split the money and the cash box was thrown out the window. Morgan later told the police where the cash box could be found.

Before trial, John Dowdy told police that the Jacksons divided up the money after the burglary. At trial, though, John Dowdy testified that he did not see the Jacksons participate in the division of the proceeds, at least "not with [his] own eyes," and that he did not discuss the burglary with the Jacksons before or after the crime occurred.

Timothy Jackson testified that he was not involved in any discussions about the burglary and did not participate in or receive proceeds from the burglary, except that he and his wife dropped John Dowdy and Morgan off at Charlie's Place and picked them up a short time later. Timothy Jackson claimed he knew nothing of the burglary. Tracy Jackson did not testify.

1. Timothy Jackson contends that trial counsel was ineffective for not trying to introduce Tammy Dowdy's pre-trial statement to police. In an unsigned statement written by an investigator, Tammy Dowdy purportedly reported that John Dowdy came to her trailer home at about 3:30 a.m. and asked her for a key to Charlie's Place. John Dowdy told her he was going back to the bar to take money and speakers, and Tammy Dowdy refused to give him the key. Tammy Dowdy gave police the names of the people who were in the trailer home during the encounter; she did not include Timothy Jackson's name. The next day, she discovered that the cash box was missing and called police. Tammy Dowdy reportedly told the investigator that the money was divided between John Dowdy, the juveniles, and a man named Ray. The investigator noted that Tammy Dowdy refused to sign the statement because she feared for her life. At the time of trial, Tammy Dowdy apparently could not be located and did not testify.

To prevail on his claim of ineffective assistance of trial counsel,

Timothy Jackson must show that counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[2] There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy.[3] The test for reasonable attorney performance has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. The test is whether some reasonable lawyer could have acted as defense counsel acted at trial. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial worked adequately.[4]

Timothy Jackson concedes in his brief that the portion of the statement which states that the Jacksons were not among those receiving proceeds from the burglary was hearsay and would have to have been redacted for use at trial. Assuming, without deciding, that the remainder of Tammy Dowdy's statement would be admissible as coming within an exception to the hearsay rule, there are reasons which a reasonable lawyer might not have sought to introduce the statement.

First, as defense counsel explained at the hearing on the motion for a new trial, Tammy Dowdy's statement did not support Timothy Jackson's trial testimony. For instance, Timothy Jackson admitted that he was present at Tammy Dowdy's trailer, that he went inside the trailer, that he heard John Dowdy ask Tammy Dowdy for the key to Charlie's Place, and that he heard Tammy Dowdy refuse the request. In her statement, Tammy Dowdy did not include Timothy Jackson as one of the people present at her home during the encounter.

Second, the question of whether Timothy Jackson heard John Dowdy speak of the burglary while they were in Tammy Dowdy's home was not critical because there was also evidence that Timothy Jackson was present in the van when John Dowdy stated his intention to burglarize Charlie's Place, that Timothy Jackson agreed to split up the money, and that afterward he received a portion of the burglary proceeds. Morgan's testimony, which included a statement that Timothy Jackson was present in the van when John Dowdy discussed his intentions, was corroborated by Morgan's ability to lead the investigator to the discarded cash box.

---

[2] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Spencer v. State*, 275 Ga. 192, 193 (2) (563 SE2d 839) (2002).

[3] *Hazelrigs v. State*, 255 Ga. App. 784, 785 (567 SE2d 79) (2002).

[4] Id.

Thus, Timothy Jackson has not shown that trial counsel's performance was deficient or that the outcome of the trial would have been different absent counsel's failure to introduce Tammy Dowdy's statement. This enumeration is therefore without merit.

2. Timothy Jackson also complains that trial counsel was ineffective because he represented both Timothy and Tracy Jackson despite the existence of an actual conflict of interest. He claims that if the Jacksons had been afforded separate counsel, Tracy Jackson's attorney could have exploited the fact that, as to her, the evidence at most supported a theft by receiving conviction, not the burglary conviction entered against her.

It is a fundamental principle that the Sixth Amendment guarantee of effective assistance of counsel includes the right of an accused to be represented by an attorney free of any conflicts of interest.[5] There is a presumptive conflict of interest when one attorney is required to represent multiple defendants over their objection.[6] However, if, as here, the defendants do not object to the multiple representation by the attorney until after trial, there is no benefit of a presumption and the defendants must show that an actual conflict of interest existed which impaired their attorney's performance on their behalf.[7] To justify separate counsel, the conflict may not be merely theoretical or speculative, but must have some substantial basis in fact.[8] The test is whether the representation deprived either defendant of the undivided loyalty of counsel.[9] In other words, did counsel slight one defendant to favor the other?[10]

The transcript here reveals no actual conflict between Timothy and Tracy Jackson. Only Timothy Jackson testified, and his testimony was consistent with a mutual defense that neither Jackson knew anything of John Dowdy's plan to burglarize Charlie's Place. He testified that he and his wife were driving to Wal-Mart to buy drinks, and that they merely gave John Dowdy a ride without knowing of his intentions. Timothy Jackson's testimony, had it been believed, would have worked to exonerate both defendants. Thus, neither client was deprived of the undivided loyalty of trial counsel.[11] Inasmuch as Timothy Jackson fails to show in any way that an actual conflict of interest existed which worked to his detriment, his argument in this regard is without merit.[12] It follows that the trial

---

[5] *Stephens v. State*, 214 Ga. App. 183, 187 (9) (b) (447 SE2d 26) (1994).
[6] Id.
[7] Id.; *Rautenberg v. State*, 178 Ga. App. 165, 169 (8) (342 SE2d 355) (1986).
[8] *Stephens*, supra.
[9] *Lamb v. State*, 267 Ga. 41, 42 (1) (472 SE2d 683) (1996).
[10] Id.
[11] See *Ward v. State*, 195 Ga. App. 166-167 (1) (393 SE2d 21) (1990).
[12] See *Griggs v. State*, 262 Ga. 766, 769 (4) (b) (425 SE2d 644) (1993); *Stephens*, supra.

court did not err in denying appellant's motion for new trial on the ground of his trial counsel's conflict of interest.[13]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 11, 2003.

*Valpey & Parks, Gregory W. Valpey,* for appellant.

*N. Stanley Gunter, District Attorney, Gerald W. Bruce, Assistant District Attorney,* for appellee.