## A07A2304. SHELNUTT v. THE STATE.
### (657 SE2d 611)

PHIPPS, Judge.

Katrina Shelnutt appeals her convictions of first degree arson, criminal damage to property in the second degree, threatening a witness in an official proceeding by unlawfully causing economic harm to a family member, and use of intimidation with the intent of influencing a witness to change her testimony in an official proceeding.

Shelnutt claims that she was denied her right to legal representation free from conflicts of interest because her attorney also represented her co-defendant, Elva Palmer. Shelnutt also contends that the count of the indictment charging her with first degree arson was fatally defective, and that the evidence is insufficient to support her convictions of threatening and influencing a witness. Additionally, she complains that trial counsel was ineffective in failing to impeach the state's primary witness, Christine Montgomery, with evidence of her commission of a prior crime. We agree that the first degree arson count of the indictment was fatally defective and reverse Shelnutt's conviction for that offense. Finding no merit in any of her other claims of error, we affirm her remaining convictions.

At the beginning of the trial, the court asked defense counsel if he had examined the case for any potential conflict in the defenses of Shelnutt and Palmer. Counsel responded that he had done that and found none. The court then asked both Shelnutt and Palmer if they were satisfied with being represented by the same lawyer. Each responded in the affirmative. Shelnutt, however, later complained of the joint representation in a motion for new trial filed by a different attorney. At the hearing on Shelnutt's motion, her trial lawyer testified that he had represented Shelnutt initially and later agreed to represent Palmer also.

Palmer and Montgomery are sisters-in-law, as Palmer is married to Montgomery's brother, Donald Palmer. Shelnutt is Montgomery's cousin. At the time in question, Montgomery had accused her uncle, Shelnutt's father, of having molested her when she was a child. Montgomery had been subpoenaed to appear in court to testify.

At the trial of this case, Montgomery testified that on April 6, 2005, before she was scheduled to appear in court to testify in the child molestation case, Shelnutt and Palmer came unexpectedly to

her house to persuade her not to testify and, when she refused, they became verbally abusive and she asked them to leave. According to Montgomery, before they left, Palmer threatened to have her evicted from her house if she testified. Montgomery further testified that after they left, she heard a loud noise outside her house, saw smoke, and went into the yard to find her husband's car on fire. The fire department extinguished the fire, but the car was completely destroyed.

Palmer testified that before she and Shelnutt went to Montgomery's house that day, Montgomery had contacted her, admitted that her allegations against Shelnutt's father were false, said that she wanted to withdraw them, and invited her and Shelnutt to her house so that she could provide them with a corrected statement. According to both Shelnutt and Palmer, they went to Montgomery's house on the day in question and began having a friendly visit with her but, during the course of the visit, Montgomery became upset, said that she was not going to change her statement, and ordered them to leave. Shelnutt and Palmer testified that they left as requested and returned to Palmer's house without further incident. Shelnutt further testified that she stayed at Palmer's house for about ten or fifteen minutes and then went to her parents' house to pick up her children.

According to Shelnutt, Montgomery's sister, Sandy Underwood (who is also Montgomery's neighbor), later told her that Montgomery had "blown up" her husband's car. Underwood's husband testified that he had seen two people leave Montgomery's house and then, over an hour later, heard a loud noise and saw the car on fire while Montgomery was in its vicinity. At trial, Shelnutt's mother and father confirmed that Shelnutt had gone to their house to pick up her children at the time in question. But Montgomery's nine-year-old son testified that he saw Shelnutt and Palmer running with a torch after the car caught fire.

1. Shelnutt claims that her trial attorney had an actual conflict of interest in the dual representation of herself and Palmer because their alibi defenses were inconsistent. We find no such inconsistency.

> It is a fundamental principle that the Sixth Amendment guarantee of effective assistance of counsel includes the right of an accused to be represented by an attorney free of any conflicts of interest. There is a presumptive conflict of interest when one attorney is required to represent multiple defendants over their objection. However, if, as here, the defendants do not object to the multiple representation by the attorney until after trial, there is no benefit of a presumption and the defendants must show that an actual conflict of interest existed which impaired their attorney's

performance on their behalf. To justify separate counsel, the conflict may not be merely theoretical or speculative, but must have some substantial basis in fact.[1]

Such a conflict exists where counsel continues to represent co-defendants after learning that they are relying upon inconsistent defenses.[2]

According to Shelnutt, her alibi defense was inconsistent with Palmer's because Palmer's defense was that she was with her husband and Shelnutt when the fire was started, and Shelnutt's defense was that she was at her parents' house at the time. As we interpret the testimony, however, Montgomery claimed that Shelnutt and Palmer set fire to the car before they left her house; whereas both Shelnutt and Palmer claimed that they returned to Palmer's house without incident. Shelnutt's claim that she went to her parents' house shortly after returning to Palmer's house did not, therefore, create an inconsistency in their defenses. Moreover, their alibis were corroborative of each other and thus mutually supporting. Consequently, their defenses were synergistic rather than antagonistic, and their representation by the same attorney did not give rise to any conflict of interest, potential or actual.[3]

2. Shelnutt contends that her conviction for first degree arson must be reversed because the indictment failed to charge the essential elements of that offense.

Unless every essential element of a crime is stated in an indictment, it is impossible to ensure that the grand jury found probable cause to indict. Consequently, there can be no conviction for the commission of a crime an essential element of which is not charged in the indictment.[4]

Therefore, although Shelnutt made no challenge to the indictment until she filed her motion for new trial, she has not waived her objection.

---

[1] *Jackson v. State*, 259 Ga. App. 566, 569 (2) (578 SE2d 181) (2003) (footnotes omitted); see *Woods v. State*, 275 Ga. 844, 845 (2) (573 SE2d 394) (2002).

[2] *Ellis v. State*, 272 Ga. 763, 766 (2) (534 SE2d 414) (2000).

[3] Compare *Golden v. State*, 250 Ga. App. 288, 289 (2) (551 SE2d 398) (2001) (defendant waived possible conflict of interest in counsel's joint representation of her and her co-defendant).

[4] *Smith v. Hardrick*, 266 Ga. 54, 55 (1) (464 SE2d 198) (1995) (punctuation and footnotes omitted); see generally *McKay v. State*, 234 Ga. App. 556, 558-559 (2) (507 SE2d 484) (1998) (distinguishing between a general demurrer, which challenges the validity of the indictment and may be raised at any time, and a special demurrer, which challenges the form of the indictment and must be raised before pleading to the indictment).

The indictment in this case charged Shelnutt and Palmer with first degree arson in violation of OCGA § 16-7-60 based on allegations that they had unlawfully and knowingly damaged Montgomery's husband's vehicle by means of fire without his consent.

OCGA § 16-7-60 (a) (1) and (2) define [arson in the first degree] as knowingly damaging (by fire or explosive) any dwelling house of another without his consent or any building, vehicle, railroad car, watercraft, or other structure of another without his consent, *where that building, vehicle, railroad car, watercraft, or other structure is designed for use as a dwelling.*[5]

Under OCGA § 16-7-62 (a) (3), "[b]uildings, vehicles, railroad cars, watercraft, aircraft, dwelling houses, and other structures are also covered by arson in the first degree if they are insured against fire damage and the fire damage occurs without the consent of both the insurer and the insured."[6] Finally, under OCGA § 16-7-60 (a) (4) and (a) (5),

the burning of any building, vehicle, railroad car, watercraft, aircraft, or other structure (regardless of whether designed for use as a dwelling and regardless of who holds an interest in the structure) also constitutes arson in the first degree if done with the intent to prejudice the rights of a spouse [of the defendant] or co-owner [of the property] or if done under such circumstances that it is reasonably foreseeable that human life might be endangered.[7]

"A person convicted of the offense of arson in the first degree shall be punished by a fine of not more than $50,000.00 or by imprisonment for not less than one nor more than 20 years, or both."[8]

OCGA § 16-7-61 (a) defines arson in the second degree as "knowingly damaging (by fire or explosive) any building, vehicle, railroad car, watercraft, aircraft, or other structure of another without his consent, or in which another has a security interest without the consent of both the owner and the lienholder."[9] "A person convicted of the offense of arson in the second degree shall be punished by a fine

---

[5] *Prater v. State*, 279 Ga. App. 527, 528-529 (1) (631 SE2d 746) (2006) (emphasis supplied).

[6] Id. at 529 (footnote omitted); see *Hall v. State*, 201 Ga. App. 133, 135 (4), (6) (410 SE2d 448) (1991).

[7] *Prater*, supra (footnote omitted).

[8] OCGA § 16-7-60 (c).

[9] *Prater*, supra at 528.

of not more than $25,000.00 or by imprisonment for not less than one nor more than ten years, or both."[10]

Insofar as the indictment charged Shelnutt with arson in the first degree, it was fatally defective because it failed to allege essential elements of arson in the first degree (e.g., either that the vehicle was designed for use as a dwelling, or that it was insured against fire damage that was done without the consent of both the insurer and insured, or that it was done with the intent to prejudice the rights of a spouse or co-owner or under circumstances making it reasonably foreseeable that human life might be endangered).[11] Therefore, even though the state's proof may have been sufficient to sustain a conviction of arson in the first degree in one or more of the above ways, we must reverse Shelnutt's conviction of arson in the first degree and sentence to fifteen years imprisonment (a sentence authorized for arson in the first degree but not for arson in the second degree).

3. Shelnutt challenges the sufficiency of the evidence to support her conviction of threatening a witness in an official proceeding under OCGA § 16-10-32 (b) (1).

OCGA § 16-10-32 (b) (1) provides that

[a]ny person who threatens or causes physical or economic harm to another person or a member of such person's family or household, threatens to damage or damages the property of another person or a member of such person's family or household, or attempts to cause physical or economic harm to another person or a member of such person's family or household with the intent to hinder, delay, prevent, or dissuade any person from . . . [a]ttending or testifying in an official proceeding . . . shall be guilty of a felony. . . .

Shelnutt was charged with threatening a witness in an official proceeding by unlawfully causing economic harm to the witness's family member by damaging the witness's husband's car. Shelnutt's argument is that the evidence does not show that Montgomery's husband suffered any economic harm as a result of the destruction of his car, because his testimony established that the car had been broken down for about a year, that he owed about $3,500 on the car

---

[10] OCGA § 16-7-61 (c).

[11] Cases such as *Hurst v. State*, 88 Ga. App. 798, 799 (78 SE2d 80) (1953) explain that in a case of arson the corpus delicti is the burning of the thing described in the indictment by the defendant through criminal means. The essential elements of a crime differ, however, from the corpus delicti. Under Georgia's statutory scheme, arson in the first, second, and third degrees are legally distinct crimes with different elements and penalties, although the corpus delicti may be the same.

to a finance company, that the company that insured the car issued a $5,000 check to the finance company in payment of the loss, and that he in turn received $1,500 from the finance company. But even if it could be said that full insurance indemnification for loss of the car removed any economic harm to Montgomery's husband as a result of the damage to the car, additional testimony given by him authorized the jury to find that as a result of the fire he suffered an uninsured loss of valuable personal property that was in the car. That testimony was sufficient to show that the fire to the car had caused him economic harm.

4. Shelnutt claims that her trial lawyer rendered ineffective assistance by failing to impeach Montgomery with evidence that she previously had committed arson.

To support this claim, Montgomery's sister, Kathy Palmer, testified at the hearing on her motion for new trial that Montgomery had confided to her many times that when she was married to her former husband, they had burned down their house to relieve themselves of the indebtedness on it after they had gotten behind on their housing payments.

> To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[12]

Shelnutt has failed to show deficient performance. *Woods v. State*[13] recognized that instances of specific misconduct can "not be used to impeach a witness' character or veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude, and the proper method of proving such a conviction is by the introduction of a certified copy thereof."[14] Counsel cannot be charged with deficient performance in failing to attempt to introduce inadmissible evidence.

---

[12] *Brooks v. State*, 281 Ga. 514, 518 (6) (640 SE2d 280) (2007) (citation and punctuation omitted).

[13] 210 Ga. App. 172 (435 SE2d 464) (1993).

[14] Id. at 173 (1) (citations and punctuation omitted). The term "moral turpitude" encompasses all felonies. *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991). With the 2005 enactment of OCGA § 24-9-84.1 (a) (1) and (2), evidence that a witness or defendant has been convicted of a felony shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.

5. Shelnutt challenges the sufficiency of the evidence to support her conviction of influencing a witness in violation of OCGA § 16-10-93.

OCGA § 16-10-93 (b) (1) (A) makes it unlawful "for any person knowingly to use intimidation, physical force, or threats; to . . . [i]nfluence, delay, or prevent the testimony of any person in an official proceeding." The indictment charged Shelnutt and Palmer with unlawfully using intimidation toward Montgomery with the intent to influence, delay or prevent her testimony in an official proceeding by going to her home and attempting to persuade her to change her testimony and then threatening to evict her from her home because she refused. In this case, there was evidence that, at the time in question, Donald Palmer (who was Shelnutt's brother and Palmer's husband) was letting Montgomery reside on his property without charge; that, after Montgomery refused Shelnutt's and Palmer's demand that she not go to court to testify against Shelnutt's father, Palmer said "this is my Goddamn house, and you will be out one way or the other tomorrow"; and that Montgomery and her husband were later evicted from the property. That evidence was sufficient to support Shelnutt's conviction of the offense charged.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 7, 2008

*Brian Steel*, for appellant.
*Peter J. Skandalakis, District Attorney, Robert N. Peterkin, Assistant District Attorney*, for appellee.