303 Ga. 583
FINAL COPY

S18A0038.  TAYLOR v. THE STATE.

HUNSTEIN, Justice.

Appellant John Taylor was tried and convicted of malice murder and related offenses in connection with the February 2011 death of Gene Musgrave and aggravated assault of Robert Sauls.[1]  Taylor appeals, alleging that he received ineffective assistance of counsel, that the trial court erred during

---

[1] On April 11, 2011, a Twiggs County grand jury indicted Taylor for the following charges: felony murder of Musgrave predicated on aggravated assault (Count 1); malice murder of Musgrave (Count 2); aggravated assault of Musgrave (Count 3); aggravated assault of Sauls (Counts 4 and 5); burglary (Count 6); theft by taking of a motor vehicle (Count 7); and entering an automobile (Count 8).

Following a trial from August 15-17, 2011, a jury found Taylor guilty of all charges.  The trial court sentenced Taylor to life without parole for malice murder (Count 2), twenty years consecutive for aggravated assault (Count 5), twenty years consecutive for burglary (Count 6), ten years consecutive for theft by taking (Count 7), and five years consecutive for entering an automobile (Count 8), for a total sentence of life without parole plus 55 years.  The remaining counts were either vacated by operation of law or merged for sentencing purposes.

Taylor filed a motion for new trial on August 24, 2011, and subsequently amended it through new counsel on November 17, 2015.  After a hearing, the trial court denied the motion as amended on December 21, 2015.  Taylor timely filed a notice of appeal; this case was docketed to the term of this Court beginning in December 2017 and was thereafter submitted for a decision on the briefs.

closing argument, and that his indictment was fatally defective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that, on February 25, 2011, Taylor was being driven from Warner Robins to Jeffersonville, Georgia, by a friend. During their drive, Taylor was acting strange, asked where he could obtain a gun, and talked about killing someone. The friend became uncomfortable with the conversation, dropping Taylor off on the side of the road and leaving. Taylor then made his way to the Ambassador Inn in Twiggs County, Georgia, where he checked in and was assigned to Room 120. Later that same evening, Taylor returned to the check-in counter and requested the key to Room 118, which was occupied by longtime patron Gene Musgrave; the hotel's owner refused Taylor's request.

At several times throughout the evening, the hotel's video surveillance system captured a man (later identified as Taylor) wearing a brown jacket walking around the property and eventually entering a black 2007 Chrysler 300 that belonged to Musgrave. Between 3:00 a.m. and 4:00 a.m. on February 26, 2011, video cameras captured Taylor as he approached Musgrave's room; the video showed Musgrave answer the door and be pushed back inside by Taylor.

2

The two men spent several minutes in the room together before the video showed Taylor exiting Musgrave's room, getting into the victim's vehicle and leaving the premises. Taylor returned to the hotel in Musgrave's car around 4:45 a.m. and went back to Room 120.

Between 9:30 and 10:00 that same morning, two hotel employees, Robert Sauls and Fannie Clark, arrived for work. While cleaning, Clark saw Taylor move Musgrave's vehicle from the parking space in front of Room 118 to a space near Room 120 and then stand near the trunk of the car. Shortly thereafter, Taylor entered the room where Sauls was cleaning and began repeatedly beating and stabbing Sauls with a tool. Clark witnessed the attack and called the hotel manager who immediately ran to the scene in an attempt to stop the assault; he could not enter, however, as Taylor had blocked the doorway. The hotel manager left the scene to call 911 and, when he returned, he found Taylor in Room 120 wiping his hands on a paper towel. Officers responded to the scene and found Sauls lying on the bathroom floor covered in blood. Sauls was taken to the hospital where doctors were able to save his life.

After reviewing the surveillance footage from the prior evening, officers went to Room 118 where they found Musgrave lying on the floor, his blood and brain matter scattered throughout the room. Musgrave had sustained numerous blunt force injuries to the head and face, consistent with being beaten with a crowbar or pipe. The medical examiner opined that blunt force trauma to the head caused Musgrave's death.

Taylor was arrested at the scene and, while conducting a pat-down search, officers located a set of keys in Taylor's pocket, which included keys to Musgrave's car and to a safe inside Musgrave's room. During their investigation, law enforcement also found numerous tools in the trunk of Musgrave's car. In Room 120, they located a blood-soaked paper towel, a pair of shoes, and a blood-spattered brown jacket; DNA testing revealed the presence of blood on Taylor's shoes which matched the DNA of both victims, and Musgrave's blood was also found on Taylor's jacket.

1. Though not enumerated by Taylor, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Taylor was guilty of the crimes for which he was

4

convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. During its case-in-chief, the State called Deputy James Faulk to provide, among other things, testimony regarding the video surveillance footage obtained from the hotel. On many occasions during the deputy's testimony, the prosecutor asked Deputy Faulk to identify the person depicted on the surveillance video as Taylor. Deputy Faulk, without objection from trial counsel, identified the suspect in the video as Taylor. Taylor claims that trial counsel was ineffective for failing to object to Deputy Faulk's testimony as improper opinion testimony. We disagree.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "If the defendant fails to satisfy either prong of the Strickland test, this Court is not

required to examine the other." (Citation omitted.) Propst v. State, 299 Ga. 557, 565 (788 SE2d 484) (2016). "In reviewing the trial court's decision, 'we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.'" (Citation and punctuation omitted.) Wright v. State, 291 Ga. 869, 870 (734 SE2d 876) (2012).

Here, even if we were to assume that counsel acted deficiently by failing to object to Deputy Faulk's testimony identifying Taylor as the suspect on the surveillance video, because the evidence of Taylor's guilt was overwhelming, he has failed to show that he was prejudiced by counsel's alleged deficient performance. Accordingly, his claim of ineffective assistance of counsel is without merit.

3. Next, Taylor alleges that the trial court erred by failing to rebuke the prosecutor during closing arguments for impermissibly commenting on Taylor's right to remain silent. The relevant facts supporting this enumeration show that, at trial, while cross-examining the State's lead investigator, the following exchange occurred between defense counsel and the witness:

Q: Okay. So my question is: the two times in ten years of having the Magistrate meet you, which you just testified to, all this, would you, is the reason, was everyone focused on that one person out there? It's safe to say. Is that true?

A: I would, honestly, I really didn't know much about that particularly [sic] person. I was more focused on the crime scene and getting the search warrants completed. I did attempt to interview [Taylor] while I was at the office. He chose not to speak with me. I was more concerned at that point on the crime scene, documenting the crime scene, assisting [another agent], who was the lead crime scene agent, I assisted him.

During closing argument, the prosecutor told the jury that the burden of proof rests with the State and that Taylor did not need to present any evidence in his defense. Then, while going through the evidence presented at trial, the prosecutor stated the following:

> You've got other evidence. You've got the blood that was on the jacket. You've got the blood that [was] on the shoes, and more than that you've also got the fact that they were tested for DNA. Yeah, the blood that's on the jacket it belongs to Mr. Musgrave, the man [that] lay dead. The blood on the shoes, one shoe has got his blood on it, Mr. Musgrave. The other shoe has got Mr. Sauls' blood on it. You don't really get much better than that in terms of DNA evidence. Do they want to say that he had the misfortune to walk through blood on both these people and had nothing to do with it? Obviously, that's not the case. *And you heard the testimony of [the lead investigator], again, not that the defendant has to speak to anybody, but his testimony was when he went to speak to him about what happened, he didn't talk to him. Again, that's his right.*

7

Defense counsel objected to this last statement as an improper comment on Taylor's right to remain silent. The prosecutor argued that he was allowed to go into testimony elicited by the defense on cross-examination, and further emphasized that he told the jury that Taylor had every right not to speak with law enforcement. The trial court responded "[l]et's just move forward . . . [w]ithout going into that further." Following closing arguments, the trial court instructed the jury that the statements of counsel during closing arguments did not constitute evidence.

Taylor alleges that the trial court erred in its ruling during closing argument by not fulfilling its duty under OCGA § 17-8-75.[2] Presuming that the trial court's response amounts to a ruling on Taylor's objection, any error from the trial court's failure to act pursuant to OCGA § 17-8-75 was harmless. Considering the overwhelming evidence of Taylor's guilt, in addition to the trial court's jury instruction, "it is highly probable that neither this statement by the prosecutor in closing argument, nor any alleged failure of the trial court to

---

[2] Providing that, on objection to counsel's statements of prejudicial matters not in evidence, the trial court shall "rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender."

comply with OCGA § 17-8-75, contributed to the verdict." Anderson v. State, 302 Ga. 74, 85 (805 SE2d 47) (2017). See also Ware v. State, 302 Ga. 792 (2) (809 SE2d 762) (2018).

4. Finally, Taylor contends that Count 6 of his indictment charging him with burglary was defective.[3] Specifically, Taylor contends that, because he was charged with three felonies in the first three counts of his indictment (felony murder, malice murder, and aggravated assault), and because Count 6 fails to specify which particular felony he allegedly intended to commit upon entering Musgrave's room, the indictment as to his burglary charge is defective. This claim, however, was not properly preserved for review.

To raise a defective indictment claim on appeal, a defendant must first raise the issue by general or special demurrer or by a timely motion in arrest of

---

[3] Count 6 reads as follows:

In the name and behalf of the citizens of Georgia, charge and accuse, [Appellant] with the offense of Burglary, for that the said [Appellant], in the County and State aforesaid, between the 24th day of February, 2011, and the 27th day of February, 2011, the exact date of the offense being unknown to the grand jury, did unlawfully, without authority and with the intent to commit a felony, therein, enter a building to wit: Ambassador Inn, Room 118, designed for use as the dwelling of Gene Allan Musgrave, located at 5193 GA Highway 96 West, Jeffersonville, contrary to the laws of said State, the good order, peace and dignity thereof.

judgment after conviction. See State v. Eubanks, 239 Ga. 483, 485-486 (238 SE2d 38) (1977). See also State v. Graves, 322 Ga. App. 798, 800-801 (746 SE2d 269) (2013); Coleman v. State, 318 Ga. App. 478 (1) (735 SE2d 788) (2012); Parks v. State, 246 Ga. App. 888 (1) (543 SE2d 39) (2000); Abreu v. State, 206 Ga. App. 361, 363 (425 SE2d 331) (1992). However, "[a] motion for new trial is not a proper vehicle for raising questions as to the legal sufficiency of an accusation." Carr v. State, 184 Ga. App. 889, 890 (363 SE2d 319) (1987). See also Scandrett v. State, 124 Ga. 141 (52 SE 160) (1905) ("Defects in an indictment afford no ground for a new trial. Exceptions which go merely to the form should be made before trial. For matters affecting the real merits, the remedy, after trial, is by motion in arrest of judgment.") (citation and punctuation omitted).

Taylor did not assert this claim at the trial level by demurrer or by a motion in arrest of judgment. The only other avenue by which to raise this claim would be through a habeas proceeding, which is not before us. See McKay v. State, 234 Ga. App. 556, 560 (507 SE2d 484) (1998) (holding that "when a claim that an accusation or indictment is absolutely void is not properly asserted in the trial court, it can be reviewed on appeal only through a habeas

10

corpus proceeding"). Accordingly, this claim is not preserved for appeal and is not properly before the court for review. To the extent that the Court of Appeals has held otherwise, that case law is disapproved. See Shelnutt v. State, 289 Ga. App. 528, 530 (2) (657 SE2d 611) (2008) (holding that "although [defendant] made no challenge to the indictment until she filed her motion for new trial, she has not waived her objection").

Judgment affirmed. All the Justices concur.

Decided May 7, 2018.

Murder. Twiggs Superior Court. Before Judge Flanders, Senior Judge.

David J. Walker, for appellant.

L. Craig Fraser, District Attorney, R. Brandon Faircloth, Peter F. Larsen, Jr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.